**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | | |
|---|---|---|
| **CYNTHIA LEE VAN BUREN,** | ) | |
| fka **CYNTHIA LEE PRICE** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:12-cv-01502-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Kathryn Tassinari and Drew L. Johnson, Drew L. Johnson, P.C., 1700 Valley River Drive, Eugene, OR 97401. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Gerald J. Hill, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**SIMON, District Judge.**

Ms. Cynthia Lee Van Buren seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income Benefits. For the following reasons, the Commissioner's decision is REVERSED and this case is REMANDED for the award of benefits.

## BACKGROUND

### A.  The Application

Ms. Van Buren filed an application for Supplemental Security Income Benefits on August 13, 2008, alleging an onset date of January 1, 1998, later amended to July 1, 2008. [1] AR 18. She alleged disability due to chronic pain in her lower back and upper neck, depression, migraine headaches, sciatic nerve problems, left shoulder and arm pain, and carpal tunnel in both arms. AR 152. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). AR 11, 105, 113. An administrative hearing was held on January 20, 2011, and the ALJ found that Ms. Van Buren was not disabled at any time since she filed her application. AR 28, 59. The Appeals Council denied Ms. Van Buren's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Ms. Van Buren now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

---

[1] At the hearing, Ms. Van Buren's attorney explained that the Social Security Administration staff person assisting Ms. Van Buren with her initial application had recorded an onset date of January 1, 1998 based on Ms. Van Buren's last date of employment. AR 66.

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R.
>    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
>    significant mental or physical duties done or intended to be done for pay
>    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
>    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
>    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
>    substantial gainful activity, the analysis proceeds to step two.

> 2. Is the claimant's impairment "severe" under the Commissioner's
>    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
>    expected to result in death, an impairment is "severe" if it significantly
>    limits the claimant's physical or mental ability to do basic work activities.
>    20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
>    or must be expected to last for a continuous period of at least 12 months.
>    20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
>    impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
>    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
>    proceeds to step three.

> 3. Does the claimant's severe impairment "meet or equal" one or more of the
>    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
>    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
>    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
>    the listed impairments, the analysis proceeds beyond step three. At that
>    point, the ALJ must evaluate medical and other relevant evidence to assess
>    and determine the claimant's "residual functional capacity" ("RFC"). This
>    is an assessment of work-related activities that the claimant may still
>    perform on a regular and continuing basis, despite any limitations imposed
>    by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
>    416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,

the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C.  The ALJ's Decision

The ALJ applied the sequential process in his decision issued on April 26, 2011.

AR 18-28. At step one, the ALJ found that Ms. Van Buren has not engaged in substantial gainful

activity since the date of her application. AR 20. At step two, the ALJ found that the

Ms. Van Buren's obesity, major depressive disorder, post-traumatic stress disorder ("PTSD"),

fibromyalgia, degenerative disc disease of the cervical and lumbar spine, and polysubstance

abuse were severe impairments. *Id.* At step three, the ALJ found that Ms. Van Buren did not

have an impairment or combination of impairments that met or equaled one of the specific

impairment listed in the regulations. AR 21-22.

The ALJ then determined that Ms. Van Buren has the residual functioning capacity

("RFC") to perform a range of light work with the following restrictions: she must avoid

climbing ladders, ropes, or scaffolds; she can engage in frequent, but not constant, balancing,

stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; she can engage in only

occasional overhead reaching with her dominant left upper extremity; she must avoid workplace

hazards, such as moving machinery and unprotected heights; and she is limited to simple,

repetitive tasks that involve no interaction with the public. AR 23. In reaching this conclusion,

the ALJ considered Ms. Van Buren's testimony, but found that it was not fully credible. AR 24.

Additionally, the ALJ gave great weight to all but one of the findings of Dr. Nancy Cloak, M.D.,

the examining psychiatrist. AR 25.  The ALJ discounted Dr. Cloak's statement that claimant

would likely "have problems with maintaining regular work attendance and completing normal

workdays, as well as dealing with the usual stress in a competitive work environment, if she does

not obtain treatment," finding it to be internally inconsistent with Dr. Cloak's statement that

claimant "should be able to perform work activities on a consistent basis without additional

OPINION AND ORDER, Page 5

supervision." AR 25, 290. Instead, the ALJ gave great weight to all of the recommendations of consulting doctor Dorothy Anderson, Ph.D. AR 25. The ALJ further considered Ms. Van Buren's daily activities, poor work history, and noncompliance with physical therapy. AR 25-26.

At step four, the ALJ found that Ms. Van Buren had no past relevant work. AR 26. At step five, the ALJ heard testimony from a vocational expert ("VE"), who testified that someone with the RFC identified by the ALJ would be able to perform the work of bench assembler (DOT #706.684-022), molding cutter (DOT #663.685-018), and basket filler (DOT #529.687-010). AR 27. Based on this testimony, the ALJ found that Ms. Van Buren could perform work that exists in significant numbers in the national economy and is therefore not disabled. AR 27-28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A]

OPINION AND ORDER, Page 6

reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630

(9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal

quotations omitted)). A reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Id*.; *see also Bray,* 554 F.3d at 1226.

## DISCUSSION

Ms. Van Buren argues that the ALJ erred by: (1) improperly discounting the statement by

examining psychiatrist Dr. Cloak; (2) improperly finding Ms. Van Buren's subjective symptom

testimony not credible; and (3) improperly finding that Ms. Van Buren retains the ability to

perform "other work" in the national economy.

### A.  Improper Rejection of Dr. Cloak's Statement

Ms. Van Buren argues that the ALJ improperly discounted Dr. Cloak's statement that

claimant may "have problems with maintaining regular work attendance and completing normal

workdays, or dealing with the usual stress in a competitive work environment, if she does not

obtain treatment." Pl.'s Br. at 12-14. In considering medical evidence, the Commissioner should

give more weight to a treating physician's opinion than to an examining physician's, and more

weight to an examining physician's opinion than a reviewing physician's. *Holohan v. Massanari*,

246 F.3d 1195, 1202 (9th Cir. 2001). "To reject [the] uncontroverted opinion of a treating or

examining doctor, an ALJ must state clear and convincing reasons that are supported by

substantial evidence." *Ryan v. Commissioner*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation

omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion

in the record, the ALJ may reject it with "specific and legitimate reasons that are supported by

substantial evidence." *Id.* Additionally, "the ALJ must give appropriate weight to the subjective

aspects of the doctor's opinion." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989).

Here, the ALJ does not assert that Dr. Cloak's opinion is contradicted by another doctor,

therefore, he must provide clear and convincing reasons supported by substantial evidence to

reject it. Dr. Cloak's medical source statement includes the following:

> The claimant is able to understand and remember instructions and
> to perform simple and repetitive tasks. Her ability to perform
> detailed and complex tasks may be limited by her concentration
> impairment. However, this is likely to improve with treatment.
>
> She should be able to accept instructions from supervisors and
> interact appropriately with coworkers, although her tearfulness
> would be a limitation in a job that required a lot of interaction with
> the public. Again, this is likely to improve with treatment.
>
> She should be able to perform work activities on a consistent basis
> without additional supervision. However, she may have problems
> with maintaining regular work attendance and completing normal
> workdays, as well as dealing with the usual stress in a competitive
> work environment, if she does not obtain treatment.

AR 290.

The ALJ gave great weight to all of Dr. Cloak's findings except one. AR 25. The ALJ

discounted Dr. Cloak's finding that Ms. Van Buren "may have problems with maintaining

regular work attendance and completing normal workdays," because the ALJ found it to be

"internally inconsistent" with the statement that Ms. Van Buren "should be able to perform work

activities on a consistent basis without additional supervision." *Id.* Additionally, the ALJ found

that rejecting Dr. Cloak's final opinion was "consistent with" the opinion of Dr. Anderson, the

reviewing source. He gave great weight to Dr. Anderson's opinion, which did not explicitly

address work attendance or completing a normal workday. *Id.*

OPINION AND ORDER, Page 8

The ALJ's finding of internal inconsistency is not supported by substantial evidence. It is not necessarily inconsistent that a worker would be able to "perform work activities" on a consistent basis but would struggle to maintain normal "work attendance." Rather, the second sentence seems to be a qualification on the first. Moreover, Dr. Cloak's finding that Ms. Van Buren would have problems maintaining regular work attendance and completing normal work days is internally *consistent* with Dr. Cloak's diagnoses of major depressive disorder, PTSD, and chronic pain in neck and back. AR 289. It is also consistent with Dr. Cloak's assignment of a Global Assessment of Functioning ("GAF") score of 50 to Ms. Van Buren. *Id.* A GAF score of 50 reflects "serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th Ed. 2000).

The ALJ's reference to the reviewing opinion of Dr. Anderson also does not provide a clear and convincing reason to reject Dr. Cloak's opinion. An ALJ cannot cure an invalid rejection of an examining opinion merely by finding that this rejection was "consistent with" the opinions of non-examining physicians. *See Ryan*, 528 F.3d at 1201. Moreover, the opinion of a reviewing doctor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician. *Lester v. Chatter*, 81 F.3d 821, 831 (9th Cir. 1996). Without a clear and convincing reason to reject Dr. Cloak's opinion, the ALJ cannot give more weight to the opinion of a reviewing source. *Holohan*, 246 F.3d at 1202.

In sum, the ALJ has not provided a clear and convincing reason that is supported by substantial evidence for discounting Dr. Cloak's statement.

**B. Ms. Van Buren's Credibility**

Ms. Van Buren argues that the ALJ discredited her testimony without providing clear and convincing reasons for doing so. Pl.'s Br. at 14-18. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).[2] It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] The Commissioner argues that the "clear and convincing" standard conflicts with SSR 96-7p, and that in light of this conflict, the agency's interpretation of the law should be given deference. It is not clear from the face of SSR 96-7p that it actually conflicts with the standard articulated by the Ninth Circuit Court of Appeals. Moreover, this court is bound by Ninth Circuit precedent.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186 *3.

Further, an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

At the hearing, Ms. Van Buren testified to chronic back and neck pain, pain in her left shoulder, panic attacks, and depression. AR 69-83. Specifically, because of her back and neck pain she can only sit and stand for short periods of time. AR 70. Because of her panic attacks and

depression, she cannot go to crowded stores anymore, and she rarely leaves her home. AR 74-75. Further, Ms. Van Buren testified that many days—about 25 percent to 33 percent of the time— she does not get of bed, except to go to the bathroom, because of her pain and depression. AR 83.

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 24. In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* In support of this determination, the ALJ offered several reasons: (1) Ms. Van Buren's statements are partially inconsistent with the objective medical findings; (2) Ms. Van Buren's treatment providers have recommended conservative courses of treatment; (3) Ms. Van Buren's daily activities are inconsistent with her symptom testimony; (4) Ms. Van Buren's lack of candor on a DHS drug and alcohol use form; and (5) Ms. Van Buren's poor prior work history.

### 1. Partial Inconsistency With Objective Medical Findings

The ALJ found that Ms. Van Buren's subjective testimony was "partially" inconsistent with the objective medical record. AR 24. As evidence of the "partial" inconsistency, the ALJ considered two pieces of the medical evidence. The first piece of evidence identified by the ALJ was the medical imaging that confirmed degenerative changes in the claimant's lumbar and cervical spine. *Id.* The ALJ noted that this imaging would "reasonably justify certain exertional and postural limitations. *Id.* The ALJ, however, discredited the extent of Ms. Van Buren's symptom testimony because despite this evidence of degenerative changes, including a

"prominent irregular diffuse disc bulge," there was no mention or evidence of "lumbar stenosis." *Id.*

The fact that the imaging report did not make a specific finding of "lumbar stenosis" is not a clear and convincing reason to discount claimant's credibility. Considering the report as a whole, it is not inconsistent with Ms. Van Buren's symptom testimony. After noting the prominent irregular diffuse disc bulge, the MRI report stated: "There is no central canal stenosis but the disc bulge does extend into the neural foramina bilaterally. Clinical correlation can be made with the possibility of exiting L5 and transiting S1 nerve root symptoms." AR 403. Moreover, the medical imaging report described Ms. Van Buren's L5-S1 disc degeneration as "advanced." AR 403.

The second piece of medical evidence that the ALJ cited to support his finding that Ms. Van Buren's testimony was partially inconsistent with medical evidence was a series of treatment notes. Several of Ms. Van Buren's treatment records noted that she had a "normal gait" and that she presented a "fully oriented" and in "no acute distress." AR 24-25. For most of these references, the ALJ relied on checklists of physiological systems appended to the beginning of each visitation report. These generic and potentially automated checklists, however, cannot override the specific, descriptive findings and subjective opinions of the doctors. *Cf. Holohan*, 246 F.3d at 1205 (ALJ erred in rejecting treating physician's opinion where ALJ was "selective in his reliance on Dr. Oh's treatment notes" and "exaggerate[d] … his description of their contents").

At several points in the medical record, treating and examining doctors made findings and observations consistent with Ms. Van Buren's symptom testimony. For example,

Ms. Van Buren's treating physician Dr. Emma Junior[3] noted on September 26, 2008, that

Ms. Van Buren had been lying down on the treatment table when she walked in, and had done so

for the last four or five appointments. AR 370. Dr. Junior also wrote, "Watching her, she really

does seem depressed" and that it was "quite noticeable that she [has] depression." AR 370-71.

Additionally, at several points in the treatment record, doctors objectively observed

Ms. Van Buren to appear "uncomfortable" and in "extreme pain." AR 236, 245, 250. The ALJ

failed to address this supporting evidence in the medical record.

There is no direct conflict between Ms. Van Buren's symptoms testimony and the

medical evidence. In fact, the medical record considered as a whole seems to be consistent with

Ms. Van Buren's testimony. Even if there was no support for Ms. Van Buren's symptom

testimony in the record, the ALJ "may not discredit the claimant's testimony as to the severity of

symptoms merely because they are unsupported by objective medical evidence." *Reddick v.

Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Burch*, 400 F.3d at 681 (holding that lack of

medical evidence can support a finding of incredibility only if there are additional grounds for

discrediting the claimant's testimony). The ALJ's finding of "partial" inconsistency with the

medical record is not supported by substantial evidence.

### 2.  Conservative Treatment

The ALJ also considered the conservative course of treatment in rejecting

Ms. Van Buren's credibility. Conservative treatment can be considered when evaluating

credibility regarding allegations of debilitating pain. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

F.3d 1155, 1162 (9th Cir. 2008); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040

---

[3] Dr. Junior, the primary treating physician in the record, who saw Ms. Van Buren over 20 times in the span of three years, is not cited or mentioned in the ALJ's opinion.

(9th Cir. 2008) (holding that the fact that claimant's pain had subsided after physical therapy and anti-inflammatory medication undermined his reports of disabling pain). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's credibility. *Carmickle*, 533 F.3d at 1162.

While it is not clear what the ALJ found to be a conservative course of treatment, the opinion seems to be referring to the physical therapy recommended by several of Ms. Van Buren's doctors. The medical record as a whole, however, does not support a finding that this recommended physical therapy undermines Ms. Van Buren's credibility. For example, Ms. Van Buren has been prescribed, and takes multiple times every day, Vicodin, Hydrocodone, Diazepam, and Gabapentin for pain management. AR 387. Additionally, Ms. Van Buren's doctors have recommended regular injections for her back pain, and she receives this treatment whenever her insurance covers it. *See* AR 228. For these reasons, the ALJ has not provided substantial evidence to support the finding of conservative treatment that is inconsistent with Ms. Van Buren's pain testimony.

### 3. Daily Activities

The ALJ also discredited Ms. Van Buren's testimony because she engaged in activities of daily living "wholly inconsistent with an individual suffering from debilitating back pain." AR 25. An ALJ may draw an adverse credibility finding from inconsistencies between the alleged severity of the claimant's symptoms and her self-reported activities. *See, e.g.*, *Valentine v. Commissioner*, 574 F.3d 685, 693 (9th Cir. 2009). There are two ways in which a claimant's activities of daily living can bear adversely on her credibility: (1) if they are inconsistent with the claimant's other testimony, or (2) if they suggest skills transferable to a work place. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2009). Neither ground is applicable here.

OPINION AND ORDER, Page 15

Ms. Van Buren testified that some days she stays in bed all day, getting up only to go to the bathroom, because she experiences so much pain. AR 83. On days when she does get out of bed, she usually has to lie down and rest in the middle of the day because of her pain. AR 85. Although she prepares simple meals for herself, she does not do any housework. *Id.* She goes shopping once or twice a week for small items late at night to avoid crowds, but has her children load and unload the groceries. AR 86 172, 174-75. She also drives herself to doctor appointments and counseling appointments. AR 80. These activities are consistent with Ms. Van Buren's description of severe pain when standing or sitting for more than a short amount of time. *See* AR 70, 171. Further, as described by Ms. Van Buren, these activities do not take up a substantial part of her day, *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), nor are they the types of activities that are "easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. "[T]he mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to [her] overall disability." *Vertigan*, 260 F.3d at 1050; *see also Fair*, 885 F.2d at 603.

### 4.  Lack of Candor on DHS Form

The ALJ found that Ms. Van Buren's credibility was undermined by "her apparent lack of candor in responding to a DHS questionnaire regarding her alcohol and drug use." AR 25. Inconsistencies in a claimant's testimony regarding drug use are a permissible basis upon which an ALJ may make an adverse credibility finding. *See Thomas v. Barnhart*, 278 F.3d 947, 959

(9th Cir. 2002); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony regarding drug use makes the claimant appear less than candid).

Here, in response to a question on a DHS form asking what substances Ms. Van Buren had used "in the past," she wrote "alcohol, marijuana." AR 210. In her session with Dr. Cloak and her other counselors, however, Ms. Van Buren reported that she had also tried methamphetamine and cocaine years ago, but never used them regularly. *See* AR 210, 288. Ms. Van Buren also reported on the DHS form that she had never had legal problems "due to alcohol and/or drug *use*," but wrote an asterisk next to the question. AR 210. The ALJ found the answer regarding past drug use to be incomplete, and the answer regarding criminal convictions to be inconsistent with Ms. Van Buren's testimony at the hearing that she had been convicted of a felony for delivery of methamphetamines in 2005. AR 81-82.

Ms. Van Buren appears to have testified honestly at the hearing regarding her drug history and conviction. She also consistently reported this history to her doctors and counselors when asked. Moreover, it is unclear whether Ms. Van Buren's answer on her DHS form to having never had legal problems "due to alcohol and/or drug use" is in fact inconsistent with her delivery conviction in 2005. Ms. Van Buren's delivery conviction was clearly drug related, but there is an ambiguity in the record about whether her conviction was due to her own drug or alcohol "use." Additionally, she included an asterisk next to the question, as if to indicate that she wanted to explain the answer or did not know precisely how to answer the question. Similarly, it is not clear that Ms. Van Buren's answer in response to the question about her past drug and alcohol use was lacking candor. Ms. Van Buren reported to her health care providers that she had tried cocaine and methamphetamine many years ago, but never used them regularly.

AR 110, 228. It is reasonable that she would think that drugs she had tried once many years ago were not pertinent. Therefore, Ms. Van Buren's responses on the DHS form do not amount to a clear and convincing reason to discount her symptom testimony.

### 5. Poor Work History

Finally, the ALJ found that Ms. Van Buren's credibility was "further eroded by her poor work history," which predates her alleged onset date. AR 26. A claimant's inconsistent or sparse work history is a permissible basis upon which an ALJ may evaluate credibility. *See Thomas*, 278 F.3d at 959 (holding that "extremely poor work history" was a clear and convincing reason to reject claimant's credibility regarding ability to work).

Ms. Van Buren testified at the hearing that she had not worked full time since approximately 1989 or 1990. AR 69. Even before 1989, Ms. Van Buren worked only sporadically. AR 147-148. Ms. Van Buren claims that her poor work history is due to the fact that she has been depressed for most of her life. AR 88. The ALJ found, however, that Ms. Van Buren's claim of long term depression was inconsistent the fact that she received average grades in high school and good grades in her community college courses. AR 24-25.

The fact that Ms. Van Buren received average grades in high school does not conflict with her assertion that she has been depressed most of her life. *Cf. Smolen v. Chater*, 80 F.3d 1273, 1286-87 (9th Cir. 1996) (holding that the fact that claimant graduated from high school and graduated in the middle of her class was not necessarily relevant to a finding of disability). Ms. Van Buren's good grades during her short term attending community college also do not undermine her claim of depression. "That a person with some impairment may seek to retool or prepare for other work by continuing education does not detract from that person's credibility if they claimed a later onset of disability." *Archer v. Apfel*, 66 F. App'x 121, 122 (9th Cir. 2003).

OPINION AND ORDER, Page 18

In sum, the ALJ has not provided clear and convincing reasons supported by substantial evidence to discount Ms. Van Buren's symptom testimony.

## C.  Limitations Improperly Excluded from the RFC

Ms. Van Buren argues that the ALJ improperly excluded some of her limitations in the hypothetical posed to the VE. The ALJ relied on the VE's testimony relating to this hypothetical in his opinion. Ms. Van Buren argues that the ALJ should have included three additional limitations: (1) the limitation identified by Dr. Cloak, which found Ms. Van Buren might have problems with work attendance and completing a normal workday; (2) the limitations identified by Ms. Van Buren's own testimony that she would have to stay in bed all day because of her chronic pain and depression 25 to 33 percent of the time; and (3) the limitation identified by the ALJ himself at step two that Ms. Van Buren has moderate limitations in concentration, persistence, and pace.

In hypotheticals posed to a VE, an ALJ need only include those limitations supported by substantial evidence. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ cannot, however, disregard limitations properly supported by the record. *Id.* When the ALJ credits the opinion of a medical source, the ALJ must include the limitations described by the medical source in the functional limitations of the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Amanti v. Comm'r. Soc. Sec. Admin.*, No. 6:11-CV-06378-MA, 2012 WL 5879530, at *5 (D. Or. Nov. 19, 2012) (finding that the ALJ erred by not including limitations supported in the record in the RFC).

Here, in addition to opining about jobs in the economy based on the RFC, [4] the VE testified regarding several other hypotheticals. First, the ALJ asked the VE about a worker with the claimant's RFC who also "couldn't make it to work, couldn't get out of bed in order to maintain sufficient concentration, persistence and pace to maintain an eight hour work day, five day work week, 40 hour work schedule or equivalent." AR 98. In response to this hypothetical, the VE testified that all competitive employment would be eliminated. Second, the ALJ asked about a worker with the claimant's RFC who also "missed work more than two times a month on a regular basis." *Id.* In response to this hypothetical, the VE testified that all competitive employment would be eliminated. *Id.* Next, counsel asked the VE about a worker who was required to spend 25 to 33 percent of the work week lying down. AR 99. In response to this, the VE testified that all competitive employment would be precluded. *Id.* Finally, Ms. Van Buren's counsel asked the VE about an individual who was required to lie down for two and a half hours each day during normal work day. *Id.* Again, the VE testified that this would preclude all competitive employment. *Id.*

As discussed above, the ALJ erred in discounting Dr. Cloak's opinion and Ms. Van Buren's symptom testimony. Dr. Cloak found Ms. Van Buren would have trouble with regular work attendance, and Ms. Van Buren testified that 25 to 33 percent of the time she

---

[4] As discussed above, the RFC found by the ALJ in his opinion was: light work; no climbing ladders, ropes, or scaffolds; frequent but not constant balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; occasional overhead reaching with left dominant extremity; avoid exposure to workplace hazards; limited to simple, repetitive tasks that involve no interaction with the public. AR 23.

cannot get out of bed and therefore could not attend work. Accordingly, for these reasons, the

RFC improperly excluded Ms. Van Buren's limitations relating to work attendance.[5]

## D.  Remand for Award of Benefits

Although the usual course when the ALJ has committed reversible error is to remand for

further proceedings, this court may remand for an award of benefits if "the record is fully

developed and it is clear from the record that the ALJ would be required to award benefits."

*Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). This court "should credit evidence

that was rejected during the administrative process and remand for an immediate award of

benefits" when the following three conditions are met: "(1) the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, (2) there are no outstanding issues that must be

resolved before a determination of disability can be made, and (3) it is clear from the record that

the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke*

*v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

When the ALJ fails to provide clear and convincing reasons for discounting the testimony

of the claimant and the opinion of the claimant's treating and examining physicians, such

evidence is credited as true. *See Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 594; *Moisa v.*

*Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Rodriguez*, 876 F.2d at 763. Because the ALJ did

not provide clear and convincing reasons for rejecting the opinion of Dr. Cloak or the

symptom testimony of Ms. Van Buren, this court credits that evidence as true. As for the second

---

[5] Because this finding requires remand for the award of benefits, the Court does not
address Plaintiff's third argument that the ALJ erred in failing to include moderate limitations in
concentration, persistence, and pace in the RFC.

factor, the record is fully developed. Finally, crediting Dr. Cloak's opinion and Ms. Van Buren's symptom testimony as true requires a finding that Ms. Van Buren is disabled.

Dr. Cloak's opinion and Ms. Van Buren's testimony, combined with the testimony of the VE, demonstrate that Ms. Van Buren should have been found disabled at step five of the sequential process. At the hearing, the ALJ asked the VE if someone with the RFC identified could sustain competitive employment if she also missed work more than two days a month on a regular basis. AR 98. This hypothetical is consistent with Dr. Cloak's opinion that Ms. Van Buren "may have problems with maintaining regular work attendance and completing normal workdays." AR 290. It is also consistent with Ms. Van Buren's testimony that she would have to stay in bed all day because of pain 25 to 33 percent of the time. The VE testified that a worker with that additional limitation would not be able to sustain competitive employment. *Id.* Thus, once Dr. Cloak's opinion and Ms. Van Buren's testimony is credited as true, Ms. Van Buren qualifies as disabled at step five of the sequential process.

## CONCLUSION

The Commissioner's decision that Ms. Van Buren is not disabled is REVERSED and this case is REMANDED for the award of benefits.

DATED this 5th day of September, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
